## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| IN RE: | : | Chapter 11 |
| | : | |
| RENT-A-WRECK OF AMERICA, INC., *et al.*, | : | Case No. 17-11592-LSS |
| | : | |
| Debtors. | : | (Jointly Administered) |
| | : | |
| RENT A WRECK, INC. AND | : | |
| DAVID S. SCHWARTZ, | : | |
| | : | Civ. No. 18-801-RGA |
| Appellants, | : | |
| v. | : | |
| | : | |
| RENT-A-WRECK OF AMERICA, INC., | : | |
| BUNDY AMERICAN, LLC, AND | : | |
| QUARLES & BRADY LLP, *et al.*, | : | |
| | : | |
| Appellees. | : | |

## **MEMORANDUM**

Scott T. Earle, Esq., Zarwin Baum DeVito Kaplan Schaer Toddy, P.C., Wilmington, DE; Roger
C. Simmons, Esq. (argued), Jacob I. Weddle, Esq., Charles E. Remus II, Esq., Gordon &
Simmons, LLC, Frederick, MD, attorneys for Appellants David Schwartz and Rent A Wreck,
Inc.

Mark Minuti, Esq., Saul Ewing Arnstein & Lehr LLP, Wilmington, DE; Faye B. Feinstein, Esq.
(argued) and Christopher Combest, Esq., Quarles & Brady LLP, Chicago, IL, attorneys for
Appellees, Rent-A-Wreck of America, Inc., Bundy American, LLC, and Quarles & Brady LLP.

February 5, 2019



**ANDREWS, UNITED STATES DISTRICT JUDGE:**

Presently before the Court is the appeal (D.I. 1) of Appellants Rent a Wreck, Inc. and

David S. Schwartz (together, "Schwartz") from a Bankruptcy Court Order dated May 17, 2018

(B.D.I. 241)[1] ("Order"), which denied Schwartz's motion for sanctions (B.D.I. 237) ("Sanctions

Motion") against Rent-A-Wreck of America, Inc. ("RAWA") and Bundy American, LLC

("Bundy," and, together with RAWA, "Debtors") and their counsel, Quarles & Brady, LLP

("Q&B"). Following discovery and a two-day evidentiary hearing, the Bankruptcy Court

dismissed the Debtors' Chapter 11 cases for failure to satisfy the good faith filing doctrine, *In re*

*Rent-A-Wreck of America, Inc*., 580 B.R. 364 (Bankr. D. Del. 2018) ("Dismissal Opinion").

Based on the dismissal, Schwartz filed the Sanctions Motion seeking an order imposing

sanctions against Debtors and Q&B pursuant to Federal Rule of Bankruptcy Procedure 9011

("Bankruptcy Rule 9011").[2] Following another evidentiary hearing, the Bankruptcy Court issued

---

[1] The docket of the Chapter 11 cases, captioned *In re Rent-A-Wreck of America, Inc., et al*., No. 17-11592-LSS (Bankr. D. Del.) is cited herein as "B.D.I. __."

[2] Bankruptcy Rule 9011 tracks (but is not identical to) Federal Rule of Civil Procedure 11. Bankruptcy Rule 9011 requires petitions, pleadings, and motions, to be signed by at least one attorney of record (or contain the signature of the unrepresented party), and further provides:

(b) Representations to the Court. By presenting to the court (whether by signing, filing, submitting, or later advocating) a petition, pleading, written motion, or other paper, an attorney or unrepresented party is certifying that to the best of the person's knowledge, information, and belief, formed after an inquiry reasonable under the circumstances, –

   (1) it is not being presented for any improper purpose, such as to harass or to cause unnecessary delay or needless increase in the cost of litigation;

   (2) the claims, defenses, and other legal contentions therein are warranted by existing law or by a nonfrivolous argument for the extension, modification, or reversal of existing law or the establishment of new law;

   (3) the allegations and other factual contentions have evidentiary support or, if specifically so identified, are likely to have evidentiary support after a reasonable opportunity for further investigation or discovery; and

   (4) the denials of factual contentions are warranted on the evidence or, if specifically so identified, are reasonably based on a lack of information or belief.

a bench ruling exercising its discretion to deny the Sanctions Motion, finding that the Debtors' Chapter 11 filing was not patently unmeritorious or frivolous or made for improper purposes of delay, harassment, or to increase costs. (B.D.I. 243, 5/17/18 Hr'g Tr. at 36:2-43:7). For the reasons set forth below, the Order is affirmed.

## I. BACKGROUND

### A. Pre-Petition Litigation

Schwartz concedes that the Dismissal Opinion accurately recites the extensive history between Schwartz, RAWA, and Q&B throughout roughly ten years of litigation in the United States District Court for the District of Maryland and the United States Court of Appeals for the Fourth Circuit. (D.I. 12 at 4). A brief summary of the relevant background follows.

Bundy sells and administers franchises for the "Rent-A-Wreck" vehicle rental businesses inside and outside of the U.S. and is the operating subsidiary of RAWA. RAWA is a holding company that also runs the reservation system for Bundy and other non-debtor affiliated entities. RAWA and Bundy are part of a larger group of private companies owned by J.J.F. Management Services, Inc. ("JJFMS"), whose primary principal is John J. Fitzgerald, Jr. Fitzgerald is an owner, president, CEO and chairman of JJFMS's board and also director and chairman of RAWA's board. RAWA's officers and directors are associated with JJFMS.

Schwartz began the business under the name "Bundy Rent-A-Wreck" in 1973 in connection with his auto sales business in Los Angeles. In 1977, Schwartz and another investor created the predecessor to Bundy for the purpose of offering Rent-A-Wreck franchises. The

---

(c) Sanctions. If, after notice and a reasonable opportunity to respond, the court determines that subdivision (b) has been violated, the court may, subject to the conditions stated below, impose an appropriate sanction upon the attorneys, law firms, or parties that have violated subdivision (b) or are responsible for the violation.
FED. R. BANKR. P. 9011(b)-(c).

Rent-A-Wreck mark was assigned to Bundy, and the Los Angeles County territory was excepted from the assignment. Years later, Bundy, now a wholly-owned subsidiary of then-publicly owned RAWA, ran the Rent-A-Wreck franchise system and managed the mark in all locations except Los Angeles. The relationship between Rent-A-Wreck and Schwartz was unorthodox as there was never a formal, executed franchise agreement, and, while RAWA imposed certain requirements upon its franchisees, Schwartz did not abide by those requirements at his Los Angeles location. In 2006, JJFMS completed the purchase of all outstanding RAWA stock and took RAWA private. Before the sale closed, Schwartz filed two lawsuits against RAWA challenging the sale. In October 2006, RAWA (now owned by JJFMS) wrote Schwartz demanding that he either provide evidence of a franchise agreement or that he stop holding himself out as a RAWA franchisee. RAWA removed the Los Angeles location from its website.

On June 25, 2007, Schwartz sued RAWA, Bundy, and JJFMS, commencing the Maryland District Court litigation presided over by the Honorable Peter J. Messitte. After two jury trials and two Fourth Circuit decisions, it has been determined that Schwartz has an implied-in-fact royalty- and fee-free franchise agreement to run a Rent-A-Wreck used car rental business in West Los Angeles for his lifetime. The exact terms of the implied franchise agreement are undetermined. Schwartz does not have to comply with RAWA's fleet requirements, and RAWA must keep the Los Angeles location on its website. A 2011 order provides: "[RAWA's] Call Center shall in no way attempt to dissuade prospective customers from connecting with [Schwartz's] business or in any way attempt to divert business from Plaintiffs' exclusive business territory to other franchises." (D.I. 16 at 520-21). Otherwise, the obligations of the parties remained unsettled, and further litigation followed. On June 29, 2017, Judge Messitte found that RAWA "deliberately directed or permitted their call center operators to advise prospective customers that Rent-A-Wreck had no franchise" in West Los Angeles, and this

4

conduct served as the basis for finding RAWA in contempt of a 2011 Order (*id.* 578-81)

("Contempt Order"). The Contempt Order provided injunctive relief "in light of RAWA's

consistent efforts to undermine Schwartz's business" and awarded Schwartz $83,620.80 in fees,

costs, and damages. (*Id.* at 581).

### B. Motion to Dismiss Chapter 11 Petitions

A month after the Contempt Order was issued, on July 24, 2017, Debtors filed voluntary

Chapter 11 petitions. Debtors were granted postpetition financing on interim and final bases.

(*See* D.I. 15 at 164, 386). On September 1, 2017, Debtors filed a motion to reject seven

franchise agreements, including Schwartz's agreement. (B.D.I. 91). Schwartz opposed the

rejection motion and filed separately the Dismissal Motion, seeking to dismiss the Chapter 11

cases on the basis that the petitions were filed for the improper purpose of rejecting his franchise

agreement and were not filed in "good faith" within the meaning of case law interpreting §

1112(b) of the Bankruptcy Code. (B.D.I. 116). The Bankruptcy Court entered an order granting

the rejection motion as to six franchise agreements and deferred a ruling on the motion as it

related to Schwartz's franchise agreement so that it could be heard together with the Dismissal

Motion. (B.D.I. 118).

A Chapter 11 case may be dismissed for cause. 11 U.S.C. § 1112(b). The Third Circuit

has held that § 1112(b) imposes a good faith standard. *In re SGL Carbon Corp.*, 200 F.3d 154,

160-62 (3d Cir. 1999). However, it is a non-statutory, judge-made doctrine, and the term "good

faith":

> Though it suggests that the debtor's subjective intent is determinative, this is not the case.
> Instead, the "good faith" filing requirement encompasses several distinct, equitable
> limitations that courts have placed on Chapter 11 filings. Courts have implied such
> limitations to deter filings that seek to achieve objectives outside the legitimate scope of
> the bankruptcy laws. Pursuant to § 1112(b), courts have dismissed cases filed for a variety
> of tactical reasons unrelated to reorganization.

*SGL Carbon*, 200 F.3d at 165 (quoting *In re Marsch*, 36 F.3d at 825, 828 (9ᵗʰ Cir. 1994)). When

a motion to dismiss a bankruptcy case is filed, the burden is on the petitioner to establish by a

preponderance of the evidence that good faith exists. *In re Tamecki*, 229 F.3d 205, 207 (3d Cir.

2000). "Whether petitioner has met the burden is a 'fact intensive inquiry' in which a court must

examine 'the totality of facts and circumstances' and determine where 'a petition falls along the

spectrum ranging from the clearly acceptable to the patently abusive.'" *In re Integrated Telecom*

*Express, Inc.*, 384 F.3d 108, 118 (3d Cir. 2004) (quoting *SGL Carbon*, 200 F.3d at 162). While

there is no definitive list of factors, the Third Circuit focuses on two inquiries "particularly

relevant to the question of good faith: (1) whether the petition serves a valid bankruptcy purpose,

*e.g.,* by preserving a going concern or maximizing the value of the debtor's estate, and (2)

whether the petition is filed merely to obtain a tactical advantage." *Id.* at 119-21. The Third

Circuit has also instructed that to be filed in good faith, a petition must do more than merely

invoke some distributional mechanism in the Bankruptcy Code: "[i]t must seek to create or

preserve some value that would otherwise be lost – not merely distributed to a different

stakeholder – outside of bankruptcy." *Id.* at 129.

     In opposing the Dismissal Motion, the Debtors bore the burden of establishing by a

preponderance of the evidence that the petitions had been filed in good faith. Relying primarily

on *In re PPI Enterprises (U.S.), Inc.*, 228 B.R. 339 (Bankr. D. Del. 1998), *aff'd* 324 F.3d 197 (3d

Cir. 2003), Debtors argued their petitions were filed for valid bankruptcy purposes of:

maximizing the value of their trademarks by rejecting underperforming or burdensome

agreements; eliminating the risk of further litigation with Schwartz; and relieving their balance

sheet of significant debt. (B.D.I. 161). Schwartz challenged the Debtors' good faith on the basis

that the Debtors were not in financial distress and filed their Chapter 11 petitions for the

improper purposes of harassment and delay. (B.D.I. 116). An evidentiary hearing was held, at

which three witnesses testified. (B.D.I. 187, 188). The parties made post-trial submissions. (B.D.I. 196, 197).

On February 13, 2018, the Bankruptcy Court issued the Dismissal Opinion. Reviewing controlling Third Circuit law, the Bankruptcy Court noted that while a desire to invoke the powers conferred by the Bankruptcy Code does not establish a good faith, nor does it constitute a valid bankruptcy purpose. *Rent-A-Wreck*, 580 B.R. at 374 (citing *Integrated Telecom*, 384 F.3d at 127-28 ("Just as a desire to take advantage of the protections of the Code cannot establish *bad* faith as a matter of law, that desire cannot establish *good* faith as a matter of law. Given the truism that every bankruptcy petition seeks some advantage under the Code, any other rule would eviscerate any limitation that the good faith requirement places on Chapter 11 filings") (emphasis in original)). Otherwise, "any entity willing to bear the cost of a bankruptcy filing could use the Bankruptcy Code's redistributive mechanisms to its advantage, a concept 'antithetical to the structure and purposes of the Bankruptcy Code.'" *Id*. at 375 (quoting *Integrated Telecom*, 384 F.3d at 129). The Bankruptcy Court further stated, "The ability to use the redistributive provisions of the Bankruptcy Code assumes the existence of a valid bankruptcy, 'which, in turn, assumes a debtor in financial distress.'" *Id.* (quoting *Integrated Telecom*, 384 F.3d at 128). "Thus, good faith is a predicate to a debtor's ability to use provisions of the Bankruptcy Code, and financial distress is a part of – if not itself a predicate to – a good faith analysis." *Id*.

Following a detailed and thorough analysis of the evidence offered by Debtors, the Bankruptcy Court made several findings with respect to the Debtors' financial condition.[3] Based

---

[3] *See Rent-A-Wreck,* 580 B.R. at 375-82 (finding, *inter alia*, that: Debtors did not file their cases because they were insolvent or because of unsecured debt; secured debt, while fixed and substantial, could not be labelled "imminent;" while each of the Debtors' schedules reflected greater debt than assets, Debtors had failed to value their biggest asset – the Rent-A-Wreck

7

on the record, the Bankruptcy Court "[could] not conclude that Debtors were in financial distress when they filed their petitions." *Id.* at 382. The Bankruptcy Court found that the Debtors "were solvent, they were not facing pressure from unaffiliated creditors nor material litigation. It is unclear whether Debtors were cash flow positive or not. The cursory testimony offered by Debtors' witnesses on this point only leaves questions, particularly after reviewing the documentary information in the record." *Id.* at 382. The Bankruptcy Court concluded, "The lack of credible facts demonstrating financial distress supports a finding that these cases were not filed in good faith." *Id.*

The Bankruptcy Court reviewed the validity of the reorganizational purposes asserted by the Debtors and determined that the non-financial evidence also did not support a finding of good faith. The Bankruptcy Court found that the "primary purpose" of the bankruptcy filing was to reject Schwartz's franchise agreement and "open the Los Angeles territory to multiple royalty-paying franchisees." *Id.* The Bankruptcy Court found that the Debtors did not have to file the cases to relieve their balance sheet of secured debt, which matured six years earlier and was owed entirely to JJFMS, nor to relieve unsecured debt, the vast majority of which was owed to affiliates. The Bankruptcy Court also found that the filing would not eliminate further litigation with Schwartz; rather, the filing "has accelerated it." *Id.* at 386. "Debtors are simply continuing their prepetition litigation in another forum." *Id.* The Bankruptcy Court found that the filing

<hr />

trademark; schedules reflected significant debt to affiliated entities and comparatively insignificant debt to unaffiliated entities; Debtors did not provide specific evidence of their cash position or liquidity; Debtors did not analyze their current ability to pay their debts as they came due prior to the bankruptcy filing; Debtors were always on the receiving end of intercompany loans; Debtors did not offer evidence in support of testimony that additional financing would be difficult to obtain, or testimony regarding any actual exploration of third-party financing, either prior to or after the bankruptcy filing; and Debtors did not identify any litigation that would pose a significant threat to their financial situation). Indeed, Debtors appeared to take the position that the good faith filing doctrine imposed no burden of proof with respect to financial distress. (*See*, *e.g.*, 12/5/17 Hr'g Tr. at 123-25).

was "nothing more than a straightforward attempt to take value that belongs to Schwartz and give it to Bundy," and thus the filing did not create or preserve value for creditors that would otherwise be lost outside of bankruptcy. *See id.* at 383. The Bankruptcy Court described the case as "a prime example of the situation the Third Circuit warned against: the use of the Bankruptcy Code – and, in particular, its redistributive provisions – when a party is willing to pay the freight of a bankruptcy case," and concluded that the "bankruptcy petitions fall on the dark side of the spectrum ranging from the clearly acceptable to the patently abusive." *Id.* at 386-88. Based on the totality of the circumstances, the Bankruptcy Court ruled that Debtors had not carried the burden of proving that the cases were filed in good faith, including that the Debtors were in financial distress, and entered the Dismissal Order. (B.D.I. 222).

### C.     Sanctions Motion

On April 17, 2018, Schwartz filed the Sanctions Motion against Debtors and Q&B pursuant to Bankruptcy Rule 9011. Appellants acknowledged that the Sanctions Motion was based on the findings set forth in the Dismissal Opinion and offered no new evidence in support of the Sanctions Motion. (*See* D.I. 12 at 4; 5/17/18 Hr'g Tr.). Following oral argument, the Bankruptcy Court exercised its discretion not to impose sanctions. (5/17/18 Hr'g Tr. at 36:2-43:7). After identifying the relevant legal standards for evaluating the petitions under Bankruptcy Rule 9011, the Bankruptcy Court could not conclude that "no attorney or client would have found the bankruptcy filing justifiable." (*Id.* at 40:9-22). Because Appellants did not establish that the petitions were "patently unmeritorious or frivolous," *see Dura Sys., Inc. v. Rothbury Inc., Ltd.*, 886 F.2d 551, 558 (3d Cir. 1989), the Bankruptcy Court declined to find that the petitions had been filed for an improper purpose. (*Id.* at 41:15-19). The Bankruptcy Court noted that the stringent standard governing the imposition of sanctions under Rule 11 contrasts sharply with the wide discretion afforded to bankruptcy courts to weigh the "totality of the

circumstances" in determining whether to dismiss a case. (*Id.* at 37:10-15). On May 25, 2018,

Schwartz filed a timely notice of appeal. The appeal is fully briefed. (D.I. 12, 19, 20). On

November 20, 2018, the Court held oral argument on the appeal. (D.I. 25).

## II. JURISDICTION AND STANDARD OF REVIEW

The Court has jurisdiction to hear an appeal from a final judgment of the Bankruptcy

Court pursuant to 28 U.S.C. § 158(a)(1). In reviewing the bankruptcy court's determinations,

this Court "review[s] the bankruptcy court's legal determinations *de novo,* its factual findings for

clear error and its exercise of discretion for abuse thereof." *See In re Trans World Airlines, Inc.*,

145 F.3d 124, 130 (3d Cir. 1998) (internal quotations and citations omitted). The parties agree

that the Court reviews the Bankruptcy Court's decision not to award sanctions under Bankruptcy

Rule 9011 for abuse of discretion. (*See* D.I. 12 at 3; D.I. 19 at 2). Abuse of discretion exists

upon clearly erroneous finding of fact, errant legal conclusions, or improper application of fact to

law. *SGL Carbon*, 200 F.3d at 159. "An abuse of discretion can occur when no reasonable

person would adopt the [lower] court's view." *Rode v. Dellarciprete*, 892 F.2d 1177, 1182 (3d

Cir. 1990).

In the context of a Rule 11 sanctions proceeding, an appellate court "should apply an

abuse-of-discretion standard in reviewing all aspects of a [lower] court's decision." *Cooter &

Gell v. Hartmax Corp.*, 110 S. Ct. 2447, 2450 (1990). The Third Circuit has confirmed that

appellate courts must "evaluate the [lower] court's factual determinations, legal conclusions, and

choice of appropriate sanction with substantial deference, considering not whether [the reviewing

court] would make the same precise determinations but only whether those determinations are

contrary to reason or without a reasonable basis in law and fact." *Ario v. Underwriting Members

of Syndicate 53 at Lloyds for the 1998 Year of Account*, 618 F.3d 277, 287 (3d Cir. 2010)

(internal quotations omitted).

## III. DISCUSSION

### A. Bankruptcy Rule 9011

As Bankruptcy Rule 9011 tracks (but is not identical to) the language of Rule 11 of the Federal Rules of Civil Procedure, the Rule 11 factors developed by the Third Circuit are persuasive. *In re 15375 Memorial Corp.*, 430 B.R. 142, 150 n.3 (Bankr. D. Del. 2010). While imposition of sanctions is within the court's discretion, courts exercise restraint based on policy considerations which are particularly important in the Third Circuit:

> The standard for imposing sanctions under Rule 11 is stringent because such sanctions (1) are in "derogation of the general American policy of encouraging resort to the courts for peaceful resolution of disputes," (2) tend to "spawn satellite litigation counter-productive to efficient disposition of cases," and (3) "increase tensions among the litigation bar and between the bench and bar."

*In re Aphton Corp.*, 423 B.R. 76, 96 (Bankr. D. Del. 2010) (quoting *Doering v. Union County Bd. of Chosen Freeholders*, 857 F.2d 191, 194 (3d Cir. 1988) (internal footnotes omitted)). Rule 11 "is intended to discourage pleadings that are 'frivolous, legally unreasonable, or without factual foundation.'" *Lieb v. Topstone Industries, Inc.*, 788 F.2d 151, 157 (3d Cir. 1986) (quoting *Zaldivar v. City of Los Angeles*, 780 F.2d 823, 831 (9th Cir. 1986)). However, "[t]he rule is not intended to chill an attorney's enthusiasm or creativity in pursuing factual or legal theories." FED. R. CIV. P. 11, Advisory Committee Notes. Courts reserve Rule 9011 sanctions for "exceptional circumstances" where a claim is "patently unmeritorious or frivolous." *Dura*, 886 F.2d at 556 (quoting *Doering,* 857 F.2d at 194); *Oliveri v. Thompson*, 803 F.2d 1265, 1275 (2d Cir. 1986) ("[R]ule 11 is violated only when it is 'patently clear that a claim has absolutely no chance of success.")

Motions for sanctions are objectively tested by the reasonableness of the filing in question under the circumstances. *Aphton*, 423 B.R. at 96. The court must consider the reasonableness of the party's belief at the time the pleading was filed and not in hindsight. *Id.*;

*Gaiardo v. Ethyl Corp.*, 835 F.2d 479, 484 (3d Cir. 1987). With respect to bankruptcy petitions,

heightened scrutiny must be applied to a motion for sanctions, as there is effectively no

opportunity to correct the filing. *See 15375 Memorial,* 430 B.R. at 150-51 (noting bankruptcy

petitions are outside of the safe harbor protections from sanctions); FED. R. BANKR. P. 9011

Advisory Committee Notes ("The 'safe harbor' provision contained in subdivision (c)(1)(A),

which prohibits the filing of a motion for sanctions unless the challenged paper is not withdrawn

or corrected within a prescribed time after service of the motion, does not apply if the challenged

paper is a petition.").

### B.    No Abuse of Discretion in Denying Sanctions

It is not a *per se* violation of Bankruptcy Rule 9011 to file a Chapter 11 petition lacking

good faith. *15375 Memorial*, 430 B.R. at 151; *In re HBA East, Inc.*, 101 B.R. 411, 418 (Bankr.

E.D.N.Y 1989). The Bankruptcy Court stated that the burden for relief under Bankruptcy Rule

9011 is proof by the movant by clear and convincing evidence that no reasonable attorney or

client could conclude that the petitions were filed in good faith (B.D.I. 243 at 17:20-24), and the

parties do not dispute the applicable burden. *See 15375 Memorial*, 430 B.R. at 151; *see also In

re Intercorp. Int'l Ltd.,* 309 B.R. 686, 692-94 (Bankr. S.D.N.Y. 2004) (applying "clear" and

"substantial" evidence standard of proof as to Bankruptcy Rule 9011 violation). The question

before the Bankruptcy Court was whether Schwartz proved by clear and convincing evidence

that the bankruptcy filing was patently unmeritorious or frivolous given the requirements of the

Bankruptcy Code or filed for improper purpose of harassment and delay. The Bankruptcy Court

concluded that the filings were neither patently unmeritorious or frivolous. Schwartz's main

argument on appeal is that the Bankruptcy Court must have abused its discretion in denying

sanctions because the findings in the Dismissal Opinion support a finding that Rule 11 has been

violated. The Court disagrees and finds no abuse of discretion.

## 1. Sanctions Order Is Not Contrary to Purposes of Bankruptcy Rule 9011

Schwartz argues denial of the Sanctions Motion "dovetails" with Bankruptcy Rule 9011. (D.I. 12 at 12-14). Under Rule 9011, Appellees certified that the petitions were not presented for any improper purpose, including harassment, unnecessary delay, or needless increase in the costs of litigation. FED. R. BANKR. P. 9011(b). On appeal, Schwartz incorrectly asserts that "the Bankruptcy Court *found* that RAWA's sole purpose in filing the Bankruptcy Case was to … circumvent all of the orders and rulings from the Maryland litigation while continuing to drive up costs for Schwartz" (D.I. 12 at 5 (emphasis added)) and that "the Bankruptcy Court *ruled* that RAWA's Chapter 11 Petitions were filed for all of those improper purposes specifically identified in Rule 9011 (*e.g.* to harass Schwartz, to delay his collection of sanctions, and to increase his litigation costs)" (*id.* at 12 (emphasis added)). However, the Dismissal Opinion does not mention Rule 11 or sanctions and contains no finding that Debtors filed the petitions for an improper purpose or that such filing was unauthorized, constituted bad faith, or was intended to delay or harass Schwartz. Contrary to Schwartz's contention, nowhere in the Dismissal Opinion does the Bankruptcy Court find that filing the Chapter 11 cases "violat[ed] … judgments, verdicts, and orders" of the Maryland District Court or the Fourth Circuit. (D.I. 12 at 7).

Schwartz argues that the Bankruptcy Court found that the petitions were filed for the improper purpose of rejecting Schwartz's franchise agreement. (*Id.*). While the Dismissal Opinion clearly found that Debtors had filed the petitions for the "primary purpose" of rejecting Schwartz's franchise agreement, so as to "open the Los Angeles territory to multiple royalty-paying franchisees," *Rent-A-Wreck*, 580 B.R. at 382, the Bankruptcy Court did not rule that rejection was an "improper purpose." To the contrary, the Bankruptcy Court considered the totality of the circumstances, including factors identified by the Third Circuit: "(1) whether the petition serves a valid bankruptcy purpose, *e.g.*, by preserving a going concern or maximizing

13

the value of the debtor's estate, and (2) whether the petition is filed merely to obtain a tactical litigation advantage." *Integrated Telecom,* 384 F.3d at 120-21. Here, Debtors asserted that the petitions were filed for reorganizational purposes that specifically included rejection of Schwartz's franchise agreement and other burdensome agreements. While the Dismissal Opinion was ultimately critical of Debtors' stated reorganizational purposes, rejection of an uneconomical contract is not an "improper purpose" under the Bankruptcy Code. As the Bankruptcy Court itself observed at an earlier hearing, "an uneconomic agreement, no matter how long it's been in place, is the exact reason why many debtors reject agreements." (B.D.I. 149, 10/16/2017 Hr'g Tr. at 14:4-6). Indeed, had the Bankruptcy Court determined that the totality of the circumstances warranted Debtors' ability to cross the Chapter 11 threshold, rejection of Schwartz's franchise agreement would not have been an improper purpose.

### 2. Petitions Are Not Frivolous or Patently Unmeritorious

Rule 11 is intended to "discourage pleadings that are frivolous, legally unreasonable, or without factual foundation." *Aphton*, 423 B.R. at 96. On appeal, Schwartz argues that the Bankruptcy Court's denial of sanctions was an abuse of discretion, as Debtors had "no legal basis" to seek Chapter 11 protection where they "did not claim to be financially distressed, let alone insolvent." (D.I. 12 at 16-17). In support, Schwartz cites Debtors' statement that they were "not asking [the Court] to find that we are in financial distress as a basis for not dismissing the case." (B.D.I. 187, 12/5/2017 Hr'g Tr. at 123-25). Debtors counter that, contrary to Schwartz's argument, Debtors did not take the position that any party willing to bear the expenses of bankruptcy may file to take to advantage of a Bankruptcy Code provision. (*See id.* ("Q. Are you saying any company, no matter what [its] financial condition, can come in and use the Bankruptcy Court to walk away from a contract? A. No.") Schwartz argues that insolvency

or financial distress is required for good faith and that Debtors' failure to make a *prima facie* showing of either supports imposition of sanctions. (D.I. 12 at 5; 16-18).

A good faith determination must be a fact-intensive, case-by-case inquiry. *See PPI*, 324 F.3d at 211. The Bankruptcy Code does not require evidence of insolvency for voluntary Chapter 11 filings, nor does case law interpreting the good faith requirement. *SGL Carbon*, 200 F.3d at 163-64. The Third Circuit has stated that "good faith necessarily requires some degree of financial distress on the part of the debtor." *Integrated Telecom*, 384 F.3d at 121 (citing *SGL Carbon*, 200 F.3d at 166 ("Courts, therefore, have consistently dismissed Chapter 11 petitions filed by financially healthy companies with no need to reorganize under the protection of Chapter 11")). Financial distress is not defined in the Bankruptcy Code and has no settled common law meaning. What "degree of financial distress" might satisfy the doctrine is not patently clear. Because the Bankruptcy Court determined that Debtors had established neither financial distress nor another basis for good faith, the Bankruptcy Court was not required to decide whether financial distress, when challenged, is a necessary element of good faith or whether it is simply one part of the totality of the circumstances analysis. *Rent-A-Wreck*, 580 B.R. at 375 n.81.

Debtors argue that the record contains evidence supporting their ongoing financial difficulties, including in connection with the Bankruptcy Court's award of postpetition financing. (*See* D.I. 19 at 8-12; 31-38). The Court agrees that this is not a frivolous case where the Debtors made no attempt to establish some degree of financial distress. Ultimately, the financial evidence offered did not carry the Debtors' burden. In the Sanctions Motion ruling, which was based on the same record as the Dismissal Motion, the Bankruptcy Court noted, with respect to Debtors' financial distress, "that certain evidence was not offered" and "largely found that the evidence was conflicting or left [the court] with questions." (5/17/18 Hr'g Tr. at 40:23-41:3).

While those findings would support dismissal based on Debtors' failure to carry their burden of establishing good faith, the Bankruptcy Court correctly concluded that those findings "do[] not support an award of sanctions under a wholly different standard." (*Id.* at 41:3-5). Based on the Court's review of the case law construing the good faith filing doctrine, Debtors' failure to carry the burden of establishing financial distress does not support the imposition of sanctions.

### 3.  Debtors' Reliance on *PPI* Was Not Patently Unmeritorious

In *PPI*, a landlord asserting a $4.75 million claim filed a motion to dismiss debtor's chapter 11 cases, claiming the debtor filed solely to avail itself of § 502(b)(6) of the Bankruptcy Code, which caps a landlord's claim for damages resulting from the termination of a real property lease. *See PPI*, 228 B.R. at 342-43. At the time of the filing, the debtor had no ongoing business, only one employee, and its sole remaining asset was a valuable stock interest. *Id.* at 343. In opposition to dismissal, the debtor argued that the bankruptcy filing was utilized not just to cap the landlord's claim but also to facilitate monetization of the stock, which was subject to certain transfer restrictions. *See id.* The Bankruptcy Court assumed for the purposes of its ruling "that the primary purpose of the petition was to cap [the landlord's] claim pursuant to § 502(b)(6)." *Id.* The Bankruptcy Court was persuaded by the *Clinton Centrifuge* case, which held that, in evaluating a debtor's good faith, the court's only inquiry is whether the debtor "seeks to abuse the bankruptcy law by employing it for a purpose for which it was not intended." *Id.* at 345 (quoting *In re Clinton Centrifuge, Inc.,* 72 B.R. 900, 905 (Bankr. E.D. Pa 1987)). The Bankruptcy Court found that "PPI's intention to cap [the landlord]'s claim using § 502(b)(6) is not a use of the Code 'for a purpose for which it was not intended'" – rather, "PPI is using § 502(b)(6) for exactly its intended purpose," thus "PPI's filing does not violate the good faith filing doctrine." *Id.*

The Third Circuit agreed that it was not necessarily bad faith for debtors to file for bankruptcy to avail themselves of certain Bankruptcy Code provisions. *PPI*, 324 F.3d at 211. The Third Circuit stated: "The Bankruptcy Court also noted that [PPI] filed its Chapter 11 petition in an attempt to divide its assets during the dissolution of its parent company. The Court found this an appropriate use of Chapter 11 since the Code clearly contemplates liquidating plans under 11 U.S.C. § 1123(b)(4), whereby a debtor may develop a chapter 11 plan to sell all of its assets." *Id.* Based on the totality of the circumstances, the Third Circuit determined that PPI's filing did not contravene the good faith requirement. *Id.* at 212.

In ruling on the Dismissal Motion, the Bankruptcy Court determined that Debtors' reliance on *PPI* was "misplaced." *Rent-A-Wreck*, 580 B.R. at 384 n.143. However, the Bankruptcy Court held that Debtors' reliance on *PPI* did not support the imposition of sanctions. The Bankruptcy Court found that *PPI* has been limited to its facts, as set forth in *Integrated Telecom* and *In re Derma Pen, LLC*, 2014 WL 7269762, at * 8 (Bankr. D. Del. 2014). However, *PPI* has not been overruled, and the Bankruptcy Court could "not say that reliance on it is patently unmeritorious or frivolous even if the case is factually distinguishable." (5/17/18 Hr'g Tr. at 41:5-15).

Schwartz argues that Debtors' reliance on *PPI* in filing the petitions was "within the ambit of Rule 9011 sanctions." (D.I. 12 at 17-18). Schwartz argues that the debtor in *PPI* claimed to be insolvent, whereas the Debtors here made no attempt to prove they were financially distressed and "manufactured superficially reasonable rationales for the filing of [the] bankruptcy petitions." (*See id.* at 5 & 16-18; D.I. 20 at 1). Schwartz further argues that the Bankruptcy Court abused its discretion when it "reversed course" in denying the Sanctions Motion in finding that Debtors' reliance on *PPI* was not sanctionable. (D.I. 12 at 17-18).

Contrary to Schwartz's argument, the Bankruptcy Court did not "reverse course." To determine that a party's reliance on a case is "misplaced" is far removed from finding such reliance "patently unmeritorious." Although the Bankruptcy Court found *PPI* factually distinguishable from Debtors' situation,[4] it did not suggest that Debtors' reliance on those cases was unreasonable, arbitrary, or frivolous. *Rent-A-Wreck*, 580 B.R. at 384. As Debtors correctly note, this argument fails to recognize that the Dismissal Motion and Sanctions Motion imposed widely disparate burdens of proof and required the Bankruptcy Court to apply unrelated standards in adjudicating them. (D.I. 19 at 17).

Nor did the Third Circuit's ruling in *Integrated Telecom* render Debtors' petitions legally unsupportable or sanctionable. As noted by the Bankruptcy Court, *Integrated Telecom* limited, but did not overrule, *PPI*. (*See* 5/17/18 Hr'g Tr. at 41:5-15); *Derma Pen, LLC*, 2014 WL 7269762, at * 8 (noting that, in *Integrated Telecom*, "[t]he filing of a Chapter 11 petition to take advantage of rights provided by the Bankruptcy Code was explored more thoroughly"). The debtor in *Integrated Telecom* was liquidating under state law and filed a Chapter 11 petition to cap a landlord's $26 million claim under a 10-year lease at $4.3 million pursuant to § 502(b)(6). *See Integrated Telecom,* 384 F.3d at 112. However, at the time of the filing, the debtor listed assets of $105.4 million in cash and $1.5 million in other assets on its schedules. *See id.* Apart from the landlord's claim, the debtor listed only $430,000 in liabilities.[5] The landlord objected to debtor's plan and moved to dismiss the case as a bad faith filing. *See id.* at 116. The

---

[4] The Bankruptcy Court also distinguished *In re Alta+Cast LLC*, 2004 WL 484881, at *3 (Bankr. D. Del. Mar. 2, 2004). *See Rent-A-Wreck*, 580 B.R. at 384.

[5] At the time of the filing, the debtor in *Integrated Telecom* was also defendant in a securities class action involving $93 million in claims. *Integrated Telecom,* 384 F.3d at 124. However, in its liquidating plan, debtor proposed a $5 million reserve which, when added to insurance coverage, limited a potential judgment to $25 million. *Id.* at 116.

bankruptcy court, relying in part on *PPI*, denied the motion to dismiss, and the landlord appealed.

The Third Circuit noted that the question of good faith is antecedent to the operation of § 502(b)(6) and considered financial distress as part of the good faith analysis. *See id.* at 128. The Third Circuit determined that debtor Integrated was not in financial distress when it filed, finding that it had no significant debt apart from the landlord's claim and that the securities litigation was not a threat to Integrated's finances. *See id.* at 128. The "absence of any financial distress" distinguished Integrated from the debtor in *PPI*, and the Third Circuit reversed and remanded the case to the Bankruptcy Court with instructions to dismiss the case. *See id.* at 130. The Third Circuit determined that Integrated's petition was not filed in good faith "as it could not – and did not – preserve any value for Integrated's creditors that would have been lost outside of bankruptcy." *Id.* The Third Circuit also distinguished its earlier decision: "*PPI* stands for the proposition that an insolvent debtor can file under Chapter 11 in order to maximize the value of its sole asset to satisfy its creditors, while at the same time availing itself of the landlord cap under § 502(b)(6)." *Id.* at 123.

In denying sanctions, the Bankruptcy Court correctly found that *PPI* has been limited to its facts but not overruled. The Court finds no improper application of cases requiring some degree of financial distress in the context of the good faith inquiry. Debtors did not fail to put forth any evidence in support of their financial difficulties. Although *PPI* has been limited to its facts, it was not patently unmeritorious for Debtors to rely on *PPI* to file the petitions to take advantage of the Bankruptcy Code's rejection provision where Debtors reasonably believed their schedules demonstrated some degree of financial distress and that they could demonstrate valid reorganizational purposes under Third Circuit law.

### 4. Appellants' Remaining Arguments Are Unavailing

The Bankruptcy Court ruled that it "cannot base [a] sanction award on actions before another Court or on parties not in front of me. In particular, I cannot impose sanctions because of what happened in the Maryland litigation." (5/17/18 Hr'g Tr. at 41:19-22). On appeal, Schwartz argues that "the Bankruptcy Court improperly, and without legal basis, ignored RAWA's prepetition conduct during the Maryland Litigation." (D.I. 12 at 14). According to Schwartz, the Bankruptcy Court's failure to consider the Debtors' "prepetition abuses" and its examination of RAWA's conduct solely during the Chapter 11 cases is "an errant conclusion of law or an improper application of law to fact." (*Id.* at 14). However, Schwartz does not cite a single case wherein a court relied on conduct in prior litigation in a separate jurisdiction in imposing Rule 11 sanctions. Schwartz merely argues that the Bankruptcy Court's decision to ignore RAWA's egregious prepetition conduct was "illogical and unsupported by the law." (*Id.*) The Court must reject Schwartz's argument that the Bankruptcy Court should have considered the "totality of the circumstances," including the prepetition Maryland litigation, in denying sanctions as application of such a standard is unsupported by law. The Court finds no abuse of discretion in the Bankruptcy Court's failure to consider Debtors' prepetition conduct in the Maryland litigation.

In the Sanctions Hearing ruling, the Bankruptcy Court referenced JJF, stating: "Neither JJF[] nor Mr. Fitzgerald appeared before me in any substantial way. If JJF[] or Mr. Fitzgerald were in front of me, as they were in [*In re*] *15375 Memorial*, I might have looked to my inherent authority to determine if sanctions were appropriate, but they are not in front of me." (5/17/18 Hr'g Tr. at 39:19-23). Schwartz argues on appeal that JJF "drove the bad faith of RAWA, as its sole shareholder and controlling corporate officer." (D.I. 12 at 23). Schwartz argues that JJF appeared through counsel at several hearings, the Bankruptcy Court had jurisdiction over JJF,

and yet "inexplicably failed to sanction JJF." (*Id.* at 22-23). However, the Sanctions Motion did not seek sanctions against JJF or Fitzgerald. (*See* B.D.I. 237). Accordingly the Court does not consider Schwartz's argument that the Bankruptcy Court's failure to sanction them was an abuse of discretion.

The Sanctions Motion sought sanctions against Q&B "because of Q&B's intimate relationship with RAWA and the Maryland Litigation." (D.I. 12 at 23). Schwartz argues that Q&B was warned regarding troublesome litigation efforts against Schwartz, citing a transcript excerpt from a hearing in connection with Schwartz's motion for contempt. (*See id.* at 24-25). Schwartz argues that Q&B's attorneys, as officers of the court, "owe[] higher duties" to the Bankruptcy Court. (*Id.* at 25). As Appellees correctly point out, the Maryland District Court did not sanction Q&B, and the dispute discussed in that excerpt – changing Schwartz's business address on the Debtors' website – was not the basis for the Contempt Order against the Debtors, which concerned the Debtors' call center. (D.I. 16 at 580). The Court agrees with Appellees that the request for sanctions against Q&B is based solely on Q&B's representation of the Debtors in the Maryland litigation, and Schwartz has not shown by clear and convincing evidence that sanctions are warranted in connection with the filing of the Chapter 11 petitions.

Finally, Schwartz argues that in not awarding sanctions, the Bankruptcy Court gave Debtors a "free pass." (*See, e.g.*, D.I. 12 at 9, 20 (denial of sanctions "absolved RAWA of responsibility" for failing to establish good faith; denial of sanctions "rewards" Debtors). Schwartz also argues that the Bankruptcy Court's decision "fails to hold RAWA accountable for its inability to prove that its [b]ankruptcy [c]ase was filed in good faith." (*Id.* at 19). Thus, Schwartz appears to argue that sanctions are necessary to punish the Debtors. This is not the law. The purpose of Rule 11 is to deter, not to punish. FED. R. BANKR. P. 9011(c)(2). Rule 11 is not intended to be used to punish parties for failure to carry their evidentiary burden at trial. To

the extent that deterrence was needed, the Bankruptcy Court viewed the dismissal itself as sufficient deterrent to the Debtors seeking to use the bankruptcy process again. (*See* 5/17/18 Hr'g Tr. at 42:17-18).

## IV.    CONCLUSION

As Appellees correctly point out, in explaining the basis for its denial of sanctions, the Bankruptcy Court "did more than what Rule 11 requires." (*See* D.I. 19 at 31 n.10). "Rule 11(c)(6) [which corresponds to Rule 9011(c)(3)], requires only that a [trial] court explain the basis of its order when the court imposes sanctions, not when it denies sanctions." *Id.* (quoting *Moeck v. Pleasant Valley School District*, 844 F.3d 387, 391 (3d Cir. 2016)).

Having reviewed the issues raised by Schwartz, the Court finds no basis to find that the Bankruptcy Court abused its discretion in denying the Sanctions Motion. The determination of what might satisfy the "somewhat nebulous good faith filing doctrine" is "a fact-intensive, case-by-case inquiry." *PPI*, 228 B.R. at 347; *PPI*, 324 F.3d at 211. Financial distress is not a term defined by statute or case law but rather determined by the facts and circumstances of each individual case. As the Bankruptcy Court observed, "[t]his type of standard gives the Court discretion to consider any and all factors the Court deems appropriate," and "it is difficult, therefore, for the parties and counsel to [gauge] how a court will weigh those factors when they are contemplating filing a bankruptcy petition." (5/17/18 Hr'g Tr. at 40:10-16). Here, it was not patently clear that Debtors had "absolutely no chance of success" in meeting the good faith filing requirement. Although Debtors did not prevail, failure to carry the burden of establishing good faith is neither the equivalent of "bad faith" nor is it "clear and convincing evidence" of an improper purpose under Bankruptcy Rule 9011.

The Order is therefore affirmed. A separate order will be entered.